**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DEMETRIUS ARMOUR,**<br>**#M06329,** | |
| **Plaintiff,** | **Case No. 20-cv-00911-SPM** |
| **v.** | |
| **T. ATKINS,**<br>**RUSSELL GOINS,**<br>**JOHN DOE 1,** *property C/O Lawrence CC,*<br>**JOHN DOE 2,** *property C/O Menard CC,*<br>**and**<br>**DEANNA BROOKHART,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Demetrius Armour, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Armour claims that he was placed in segregation, his property was confiscated, and he was transferred from Lawrence Correctional Center to Menard Correctional Center, a maximum security facility, in retaliation for filing grievances and a lawsuit on staff conduct. Armour requests declaratory judgment and monetary damages.

Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Complaint

Armour alleges the following: On December 28, 2019, while housed at Lawrence Correctional Center ("Lawrence"), he was taken from yard to segregation. (Doc. 1, p. 6-7). When Armour asked the lieutenant why he was being placed in segregation, the lieutenant answered, "I don't know for what, you don't give us any problem, what [did] you do?" (*Id.* at p. 7). Armour responded that he did not "break any prison rules to be placed into segregation." (*Id.*).

The next day, Armour was served with "a guised investigation disciplinary report," which stated he was being placed in segregation "on Investigative Status pending the outcome of an investigation. Upon the completion of the investigation, it shall be determined if inmate Armour M06329 is to be cited under DR 504." (Doc. 1, p. 8, 25). The report was signed by Internal Affairs Correctional Officer Atkins. When he asked correctional officers who was responsible for placing him in segregation and who was conducting the investigation, he was told, "the higher ups." (*Id.* at p. 8). On January 12, 2020, Armour spoke with Warden Brookhart and explained that he felt he was wrongfully placed in segregation because he did not break any prison rules. She responded, "you had to break some prison rule to be back here." (*Id.*). Armour remained in segregation from December 28, 2019, through March 4, 2020, and an investigation did not take place.

On December 31, 2019, Armour received a "Relinquishing of Personal Property" form from Lawrence property officer, John Doe 1. (Doc. 1, p. 11, 31). His radio/cassette player and eighteen cassette tapes were confiscated. John Doe 1 falsely indicated that Armour had altered the player. Additionally, Armour was not allowed to send his confiscated property out to his family in accordance with the Illinois Administrative Code.

On March 4, 2020, Armour was transferred to Menard Correctional Center ("Menard"). (Doc. 1, p. 9-10). On March 6, 2020, under the guise of "excess property," a Menard property officer, John Doe 2, confiscated two jars of peanut butter, ten "nude women (non-penetration)

magazines," two deodorants, one bottle of laundry soap, and a set of drawing pencils. Even though, Armour was at the allowable limit of personal property under the Illinois Administrative Code.

DISCUSSION

Based on the allegations of the Complaint, the Court finds it convenient to designate the following five counts:

**Count 1:** Fourteenth Amendment due process violation against Atkins for writing two false investigation disciplinary reports against Armour resulting in his placement in segregation.

**Count 2:** Fourteenth Amendment due process claim against John Doe 1 and John Doe 2 for confiscating Armour's property.

**Count 3:** First Amendment retaliation claim against John Doe 1 and John Doe 2 for depriving Armour of his property.

**Count 4:** First Amendment claim against Atkins for writing two false investigative disciplinary reports against Armour in retaliation for filing grievances and a lawsuit.

**Count 5:** First Amendment claim against Atkins, Goins, and Brookhart for placing Armour in segregation and transferring him to a maximum security facility in retaliation for filing grievances and a lawsuit.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.** *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

Count 1

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). Generally, prisoners "do not have a liberty interest in avoiding brief periods of segregation, whether administrative or

disciplinary." *Smith v. Akpore*, 689 F. App'x 458, 460 (7th Cir. 2017). *See also Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) ("an inmate's liberty interest in avoiding disciplinary segregation is limited") (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest is triggered only when the segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Lisle v. Welborn*, 933 F.3d 705, 721 (citing *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). *See also Miller v. Dobier*, 634 F.3d 412, 414–15 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause."). In order to determine if a sentence of segregation amounts to an atypical and significant hardship, the Court looks "to both the duration of the segregation and the conditions endured." *Lisle,* 933 F.3d at 721 (citing *Marion,* 559 F.3d at 697).

Here, Armour claims he was placed in segregation at Lawrence for a little over two months, as a result of Atkins's adverse actions. (Doc. 1, p. 14). He does not describe his conditions of confinement during this time or assert that he was subjected to atypical and significant hardships in violation of the Constitution. The placement in segregation for this period of time, even under the pretext of investigatory status, does not, standing alone, plead a loss of liberty that requires due process. *See Lekas v. Briley,* 405 F. 3d 602, 603 (7th Cir. 2005) (holding that three months in segregation under investigative status without additional facts does not implicate a liberty interest). Accordingly, Count 1 is dismissed without prejudice.

### Count 2

Armour has also not pled a constitutional violation in the confiscation of his property. To state a property loss claim under the Fourteenth Amendment, a plaintiff must establish a deprivation of liberty or property without due process of law. However, if the state provides an adequate remedy, the plaintiff has no civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530–36

Page 4 of 9

(1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). In that vein, Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Thus, Armour must pursue any claims for the loss of his property in the Illinois Court of Claims. Furthermore, to the extent Armour contends that the confiscation of his property violated the Illinois Administrative Code, his claim also fails. "[A] violation of a state policy by itself does not give rise to a constitutional claim." *Harris v. Manlove*, 799 F. App'x 423, 426 (7th Cir. 2020) (citing *Tucker v. City of Chi.*, 907 F.3d 487, 494 (7th Cir. 2018)). For these reasons, Count 2 will be dismissed with prejudice from this action.

### Retaliation: Counts 3 -5

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

### Count 3

Armour asserts that John Doe 1 and John Doe 2 took away his property without "legitimate penological objectives of the correction system, which constituted retaliation in violat[ion] of the First Amendment." (Doc. 1, p. 14, 15). Armour does not plead that John Doe 1 and John Doe 2 were motivated by his exercise of a First Amendment activity, and the Court will not infer retaliation simply because there was no "penological objective." Thus, he has failed to state a claim

for retaliation. Count 3 is dismissed without prejudice.

**Count 4**

Armour alleges that Atkins filed two false investigative reports against him because he filed grievances and a lawsuit. (Doc. 1, p. 13-14). This is sufficient for Count 4 to proceed. *See Higgs v. Carver,* 286 F. 3d 437, 439 (2002).

**Count 5**

Likewise, Armour asserts that Atkins, Goins, and Brookhart placed him in segregation and transferred him to a maximum security facility because he filed grievances and a lawsuit against prison staff. (Doc. 1, p. 14-15). Again, this is sufficient to state a claim, and Count 5 survives screening.

### RECRUITMENT OF COUNSEL

Armour has filed a motion asking the Court to recruit counsel on his behalf. Pursuant to 28 U.S.C. § 1915(e)(1), the Court "may request an attorney to represent any person unable to afford counsel." [1]  When faced with a motion for recruitment of counsel the Court applies a two part test: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007).

Armour has failed to meet his threshold burden of demonstrating he has made a reasonable attempt to secure counsel on his own. He states that he has written attorneys, and they have declined to take his case. Along with the Complaint, Armour provides a copy of a letter from a law firm declining representation. (Doc. 3, p. 3). He does not provide, however, any other details regarding other attorneys he has attempted to contact, such as names, phones numbers, or

---

[1] Although Armour is not proceeding *in forma pauperis* and has paid the full filing fee, the Court still finds him indigent and unable to afford counsel for the purposes of Section 1915(e)(1). (*See* Doc. 2, 7).

addresses, and contacting one law firm does not establish the reasonable effort required before seeking assistance from the Court. Should Armour choose to move for recruitment of counsel at a later date, the Court directs him to include in the motion the names and address of at least three attorneys he has contacted, and if available, attach the letters from the attorneys who declined representation.

## MOTION FOR STATUS

The motion for status (Doc. 11) is denied as moot in light of this Order.

## DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. **COUNT 4** shall proceed against Atkins. **COUNT 5** shall proceed against Atkins, Goins, and Brookhart. **COUNTS 1** and **3** are **DISMISSED without prejudice,** and **COUNT 2** is **DISMISSED with prejudice.** Because there are no surviving claims proceeding against John Doe 1 and John Doe 2, they are **DISMISSED** without prejudice, and the Clerk of Court is **DIRECTED** to **TERMINATE** them as parties.

The Motion for Recruitment of Counsel (Doc. 3) is **DENIED without prejudice,** and the Motion for Status (Doc. 11) is **DENIED as moot.**

The Clerk of Court shall prepare for Atkins, Goins, and Brookhart: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendants' place of employment as identified by Armour. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant cannot be found at the work address provided by Armour, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to file an appropriate responsive pleading to the Complaint in a timely manner and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

Finally, Armour is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   September 24, 2021**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.