IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMETRIUS ARMOUR, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-911-MAB |
| | ) |
| TAIJA ATKINS, | ) |
| DEE DEE BROOKHART, and | ) |
| RUSSELL GOINS | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the motion for summary judgment on the issue of exhaustion filed by Defendants Taija Atkins, Dee Dee Brookhart, and Russell Goins (Doc. 33). For the reasons explained below, the motion is granted in part and denied in part.

### BACKGROUND

Plaintiff Demetrius Armour, an inmate of the Illinois Department of Corrections, brought this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights at Lawrence Correctional Center. Following a threshold review of the complaint pursuant to 28 U.S.C. §1915A, Plaintiff was permitted to proceed on the following claims:

> **Count 4:** First Amendment claim against Taija Atkins for writing two false investigative disciplinary reports against Plaintiff in retaliation for filing grievances and a lawsuit.

> **Count 5:** First Amendment claim against Taija Atkins, Russell Goins, and Dee Dee Brookhart for placing Plaintiff in segregation and transferring him to Menard, which is a maximum-security facility, in retaliation for filing grievances and a lawsuit.

(Doc. 13). Defendants filed a motion for summary judgment on March 28, 2022, asserting that Plaintiff failed to exhaust his administrative remedies prior to filing suit (Doc. 33). Defendants argue that Plaintiff did not complete the grievance process and also that the substance of the grievances was insufficient to properly grieve the claims in this case. Plaintiff filed his response in opposition on April 19, 2022 (Doc. 34).

An evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on October 25, 2022 (Doc. 51). Plaintiff was the only witness who testified.

### FINDINGS OF FACT

While at Lawrence, Plaintiff was taken to segregation and placed on investigative status on December 28, 2019 (Doc. 33-2, p. 1). He submitted an emergency grievance dated December 30, 2019 (#1-20-007), complaining that the investigative report he received did not state he had committed any offense or explain why he was placed in segregation (Doc. 33-1, pp. 23–24). He claimed that he had done nothing wrong (*Id.*). He complained that he was "taken away from his rights and privileges" and was "getting pick[ed] on by staff" (*Id.*). He further stated that that he used the grievance process to "report all people that pose a threat to [him]" but "it seem[s] the only results [was] punishment by staff" (*Id.*).

The grievance was deemed a non-emergency by the warden and returned to Plaintiff, who then resubmitted the grievance through the normal grievance process (Doc.

33-1, pp. 23–24; Doc. 33-4, p. 8; Doc. 33-5; Doc. 34, p. 16). The counselor responded on January 8, 2020, writing "No incident date provided," and apparently returned the grievance to Plaintiff (Doc. 33-1, pp. 23–24; Doc. 33-4, p. 8). Plaintiff testified that he sent the grievance back in, intending for it to go to the grievance officer (*see also* Doc. 34, pp. 1–3). The cumulative counseling summary indicates it was received by the Grievance Office on January 15th for "2nd level review," meaning review by the grievance officer (Doc. 33-4, p. 8; *see also* Doc. 33-1, pp. 21–22). However, for reasons not reflected in the record, the grievance was instead "returned to [counselor] for a 1st level response" (Doc. 33-4, p. 8; Doc. 33-5). The counselor at Lawrence authored a second response to the grievance on March 3rd (Doc. 33-1, pp. 21–22; Doc. 33-4, p. 7).

The following day, on March 4th, Plaintiff was transferred to Menard Correctional Center (Doc. 33-2). The grievance log indicates that grievance #1-20-007 with the counselor's second response was returned to Plaintiff on March 6th (Doc. 33-5). Specifically, Defendants assert that it was "mailed to Plaintiff on or about March 6, 2020," and Plaintiff "received the response through the mail" (Doc. 33, pp. 3, 7). However, there is no evidence in the record that supports either assertion (*see* Docs. 33-1, 33-3, 33-4, 33-5). And Plaintiff testified that he never received the grievance back from Lawrence (*see also* Doc. 34, p. 2).

It is undisputed that Plaintiff authored a new grievance from Menard dated March 7, 2020 (Doc. 33-3, pp. 11–12). In this new grievance, Plaintiff stated that he "was wrongful[ly] placed into segregation . . . and held on a guise investigation report until staff transfer[red] me out of the institution." (*Id.*). He also indicated that the previous

grievance he submitted at Lawrence (#1-20-007) on this issue was not returned to him before he transferred (*Id.*). For relief, Plaintiff requested "$100 a day from 12-28-2019 to 3-4-2020 (75 days) and punitive $20,000" (*Id.*). Plaintiff submitted the new grievance directly to the ARB because it concerned events at Lawrence, and he was now housed at Menard. The ARB received the grievance on March 13, 2020 and returned it without further redress because it was "Not submitted in the timeframe outlined in Department Rule 504" (Doc. 33-3, p. 11). The ARB also indicated that "[m]onetary compensation is not part ARB's scope of review" (*Id.* at p. 12).

**LEGAL STANDARDS**

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a

prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

*Exhaustion*

The Prison Litigation Reform Act provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted). In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Failure to do so means failure to exhaust. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004).

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code to exhaust his claims. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). The Code provides that an inmate may request a grievance be handled as an emergency by submitting the request directly to the warden. *Id*. at § 504.840. If the warden determines that the grievance does not involve an emergency, the inmate is notified in writing that he or she may resubmit the grievance through the normal grievance process. *Id*. The normal grievance process generally involves three

steps. First, the offender must submit a grievance to their counselor. *Id.* at § 504.810(a).[1] After the counselor responds, the grievance goes to the grievance officer, who tenders a recommendation to the warden within two months after receipt of the written grievance, "when reasonably feasible under the circumstances." *Id.* at § 504.830(e). The warden then reviews the recommendation and provides the inmate with a written decision on the grievance. *Id.* If the inmate is unsatisfied with the warden's decision, he or she has thirty days from the date of the warden's decision to appeal to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director of the IDOC, who then makes a final decision. *Id.* at § 504.850(d), (e).

Some grievances, however, must be submitted directly to the ARB. This includes grievances regarding "issues that pertain to a facility other than the facility where the offender is currently assigned, excluding personal property and medical issues." 20 ILL. ADMIN. CODE § 504.870(a)(4). The ARB reviews and processes the grievance in the same manner as an "appealed" grievance. *Id.* at § 504.870(b).

## DISCUSSION

Defendants make two arguments as to why Plaintiff failed to exhaust his administrative remedies. First, they argued in their brief and at the hearing that when it came to Plaintiff's complaints about his placement on investigative status, Plaintiff had to complete the grievance process for grievance #1-20-007 by submitting it to the ARB in

---

[1] There are exceptions to this rule, none of which apply here. 20 ILL. ADMIN. CODE § 504.810(a) (2017).

order to fully exhaust his administrative remedies, and he could not begin anew by sending a new grievance directly to the ARB (Doc. 33, pp. 6–7). In other words, since Plaintiff started grieving the issues at Lawrence with grievance #1-20-007, then he was obligated to see it through all the way to the end. He could not change horses midstream and start over by sending a fresh grievance directly to the ARB.

Defendants' argument, however, is inconsistent with Seventh Circuit case law. In *Chambers v. Sood*, the inmate initiated the grievance process at Stateville Correctional Center but was transferred to Western Correctional Center before the process could be completed. *Chambers v. Sood*, 956 F.3d 979, 981–82 (7th Cir. 2020). The grievance was returned to the inmate with a memo explaining that it was not reviewed by the grievance officer prior to his transfer and advising that if he wanted to appeal, he should forward the grievance to the ARB with a copy of the memo. *Id.* at 982. The inmate, however, did not submit the grievance to the ARB and instead filed suit. *Id.* The Seventh Circuit held that the inmate failed to exhaust his administrative remedies. *Id.* at 984. The Court acknowledged that when the grievance process is interrupted by an inmate's transfer to another institution, there is nothing more that can be done for the inmate at the institutional level, but the regulations require the inmate to "take his complaint . . . to the ARB for decision" in order to fully exhaust his administrative remedies. *Id.* "Whether by 'appeal' or through a fresh grievance raising a problem that occurred at an earlier-assigned facility, [the inmate] needed to submit the matter to the ARB." *Id*

Here, just like in *Chambers,* the grievance process that Plaintiff initiated at Lawrence was interrupted when Plaintiff was transferred to Menard. At that point,

Plaintiff did not have to wait on or try to obtain a response from the grievance officer and warden at Lawrence; he only had to submit the issues to the ARB prior to filing suit. He was not obligated to do so by "appealing" grievance #1-20-077, as Defendants contend. That was simply one option. He also had the option of submitting an entirely new grievance directly to the ARB.

At any rate, the Court finds Plaintiff credible in his testimony that grievance #1-20-007 was never returned to him, and he could not possibly have sent it to the ARB. Accordingly, the Court finds the grievance process was rendered unavailable to Plaintiff as it pertains to grievance #1-20-007, and that grievance is deemed to be fully exhausted. *See Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016) (citations omitted).

Defendants' second argument is that even if the Court decides the grievance process was rendered unavailable, the substance of grievance #1-20-007 is insufficient to exhaust as to Defendants. Specifically, Defendants argue that Plaintiff failed to name or describe them in the grievance and the grievance does not mention anything about retaliation. The Court is unpersuaded by Defendants' argument.

The purpose of exhaustion under the PLRA is to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit. *Jones v. Bock*, 549 U.S. 199, 219 (2007); *Schillinger v. Kiley*, 954 F.3d 990, 995 (7th Cir. 2020). Grievances are *not* intended to put an individual defendant on notice of a claim against them. *See Jones*, 549 U.S. at 219 ("[E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."); *Johnson v. Johnson,* 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is

to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.").

While the Illinois Administrative Code requires grievances to name or at least describe each person "who is the subject of or who is otherwise involved in the complaint[,]"20 ILL. ADMIN. CODE § 504.810(c), the identification requirement has never been construed to mean that a grievance must name each person who ultimately becomes a defendant. *Dye v. Kingston*, 130 Fed. Appx. 52, 55 (7th Cir. 2005) (citing *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002)). Rather, "prisoners need identify names only to the extent practicable." *Glick v. Walker*, 385 Fed. Appx. 579, 582 (7th Cir. 2010). "The Code does not require the prisoner to do more than articulate what facts the prison could reasonably expect from a prisoner in his position." *Id.*

Additionally, the Seventh Circuit has held that a procedural shortcoming, like failing to specifically name defendants, does not amount to a failure to exhaust if prison administrators did not explicitly rely on that shortcoming to reject the grievance. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2013). "Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense." *Id.* (citing *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)).

Here, Plaintiff complained about being placed in segregation on investigative status, which is an administrative decision, "and it belies reason to suggest that prison

administrators . . . were unaware of who was responsible for that decision." *Maddox*, 655 F.3d at 722. Plaintiff, however, credibly testified that he did not know who made the decision to place him on investigative status. As the Seventh Circuit has stated before, at the source of administrative decisions such as this one is "a mystifying web of rules and procedures, and behind those an army of administrators" and "it would be unreasonable to expect that, for every set of facts, an inmate will be able to peel back layers of bureaucracy and match a disputed decision with the prison employee responsible for that decision." *Glick*, 385 Fed. Appx. at 582. When it comes to the investigative report, all prison officials needed to do was look at it to see which officer wrote it. While Plaintiff could have done the same, his failure to provide the prison officials with information that was readily available to them had no discernible impact on the prison's ability to investigate and process his grievance. In fact, the counselor's second response addressed the substance of grievance #1-20-007, notwithstanding the absence of any names (*see* Doc. 33-1, p. 21). The grievance was never rejected for failing to specifically identify the individuals connected to Plaintiff's problem. Under these circumstances, Plaintiff's failure to name the defendants in the grievance "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Maddox*, 655 F.3d at 722. Therefore, Defendants cannot rely on this procedural deficiency as a basis for asserting that Plaintiff failed to exhaust.

Additionally, the fact that Plaintiff never specifically used the words "retaliate" or "retaliation" in grievance #1-20-007 does not mean that the content of the grievance was insufficient to cover his claims in this case. The gist of grievance #1-20-007 is that Plaintiff

thought he was being wrongfully held on investigative status. He indicated the investigative report did not list any offenses, and he said he had done nothing wrong. He further stated that he had "been getting pick[ed] on by staff" and when he reported people through the grievance process, "the only results . . . [was] punishment by staff." A fair reading of the grievance should have induced prison officials to consider the possibility that Plaintiff was being retaliated against. Additionally, the Illinois Administrative Code does not require inmates to plead legal theories or causes of action, such as "retaliation," in their grievances. *See* 20 ILL. ADMIN. CODE § 504.810(c). *See also Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("When the administrative rulebook is silent, a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. . . . [T]he grievant need not . . . articulate legal theories or demand particular relief.").

For these reasons, the Court rejects Defendants' argument that the substance of grievance #1-20-007 is insufficient to exhaust as to them. The Court concludes that grievance #1-20-007 was fully exhausted and sufficiently covers Plaintiff's claims that Defendants Atkins, Brookhart, and Goins retaliated against him by issuing a false investigative report and placing him in segregation on investigative status.

Grievance #1-20-007 does not, however, cover Plaintiff's claim that Defendants retaliated against him by transferring him to Menard, which Plaintiff freely admitted at the hearing. The Court finds this aspect of his claim is also not exhausted by the second grievance that Plaintiff submitted directly to the ARB. To begin with, the second grievance was rejected by the ARB as procedurally deficient for not being submitted in

the proper timeframe. Specifically, in the "summary of grievance" section, Plaintiff did not mention the date on which he was transferred to Menard. Although he wrote in the "Relief Requested" section that he wanted "$100 a day from 12-28-2019 to 3-4-2020," it is too much of a stretch to expect the ARB to infer that these were the dates Plaintiff was held on investigative status, which ended when he was transferred on March 4, 2020. The ARB grievance also did not give sufficient notice to prison officials that Plaintiff was complaining that his transfer was retaliatory. Plaintiff simply wrote that he was wrongfully held on investigative status until he was transferred. It reads as though Plaintiff mentioned the transfer as a matter of fact, as in the transfer was the event that ended his wrongful placement on investigative status. There is nothing that would suggest to prison officials that the transfer was also wrongful. For these reasons, the Court concludes that Plaintiff failed to exhaust his claim that Defendants retaliated against him by transferring him to Menard.

## Conclusion

The motion for summary judgment on the issue of exhaustion filed by filed by Defendants Taija Atkins, Dee Dee Brookhart, and Russell Goins (Doc. 33) is **GRANTED in part and DENIED in part.** It is granted as to Plaintiff's claim that Defendants retaliated against him by transferring him to Menard and denied in all other respects.

This matter will proceed on the following claims:

**Count 4:** First Amendment claim against Taija Atkins for writing two false investigative disciplinary reports against Plaintiff in retaliation for filing grievances and a lawsuit.

**Count 5:** First Amendment claim against Taija Atkins, Russell Goins, and Dee Dee Brookhart for placing Plaintiff in segregation in retaliation for filing grievances and a lawsuit.

The stay on discovery on the merits of Plaintiff's claims (*see* Doc. 25) is **LIFTED**, and the parties can proceed with discovery. A new schedule will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: October 28, 2022**

                                                     *s/ Mark Beatty*
                                                     **MARK A. BEATTY**
                                                     **United States Magistrate Judge**