IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMETRIUS ARMOUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:20-CV-911-MAB |
| | ) |
| TAIJA ATKINS, DEE DEE BROOKHART, and RUSSELL GOINS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is currently before the Court on the Motion for Summary Judgment filed by Defendants Taija Atkins, Dee Dee Brookhart, and Russell Goins (Doc. 81). For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

### BACKGROUND

Plaintiff Demetrius Armour brought this civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while incarcerated at Lawrence Correctional Center (*see* Docs. 1, 13). Plaintiff alleges that he filed numerous grievances prior to the events in question in this case about staff misconduct at Lawrence (Doc. 1 at p. 6). Thereafter, in December 2019, Defendant Atkins filed an investigative report against him which led to him being placed on investigative status and taken to segregation (Doc. 13 at p. 2, Doc. 81 at p. 3, Doc. 81-3 at p. 1). Following that investigative report, Plaintiff wrote Grievance No. 1-20-007, complaining of his placement in segregation and the inadequacy of the investigative report filed against him (Doc. 81-4 at pp. 7-8). Several

weeks later, on January 27, 2020, Defendant Atkins filed a second investigative report against Plaintiff (Doc. 81-3 at p. 2). Both reports placed Plaintiff on investigative status pending the outcome of an investigation, and other than citing to "DR 504," neither provides any further explanation as to the underlying reason for the investigations (Doc. 81-3). Plaintiff remained in segregation on investigative status until he was transferred from Lawrence to Menard Correctional Center on March 4, 2020 (Doc. 81 at p. 4).[1]

Plaintiff filed suit against the instant Defendants, along with several others on September 10, 2020 (Doc. 1). After conducting a preliminary review pursuant to 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on two counts of retaliation (Doc. 13 at pp. 3-6). Following Defendants' motion for summary judgment based upon Plaintiff's failure to exhaust his administrative remedies, the claims Plaintiff was permitted to proceed upon were narrowed to the following:

> **Count 4**: First Amendment claim against Taija Atkins for writing two false investigative disciplinary reports against Plaintiff in retaliation for filing grievances and a lawsuit.
>
> **Count 5**: First Amendment claim against Taija Atkins, Russell Goins, and Dee Dee Brookhart for placing Plaintiff in segregation in retaliation for filing grievances and a lawsuit.

(Doc. 52, pp. 12-13).

Defendants filed their motion for summary judgment in January 2024 (Doc. 81). Plaintiff filed a response in opposition less than one month later (Doc. 86).

---

[1] As the parties agree, at the time of the events in question, Lawrence was a medium security facility while Menard was a maximum security facility (Doc. 81 at p. 6, Doc. 86 at p. 4).

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting Fed. R. Civ. P. 56(c)). The non-movant receives the benefit of conflicting evidence and reasonable inferences but is still required to produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023). In other words, if the nonmovant presents enough evidence such that a reasonable jury could return a verdict in his or her favor, summary judgment is inappropriate. *Id.*; *see also Hansen v. Fincantieri Marine Group, LLC*, 763 F.3d 832, 836 (7th Cir. 2014) (explaining that the Court's role in evaluating a motion for summary judgment is not to determine the truth of the matter or choose between conflicting evidence and inferences).

Additionally, in light of Plaintiff's *pro se* status, the Court liberally construes his factual allegations and pleadings. *See Smallwood v. Williams*, 59 F.4th 306, 318 (7th Cir. 2023). Moreover, the Court may consider any evidence placed in the summary-judgment record to help fill in any gaps. *See Arroyo v. Volvo Group N.A., LLC*, 805 F.3d 278, 285 (7th Cir. 2015) ("Arroyo did include the emails and other materials in the record, so we are free to consider them.").

## ANALYSIS

Defendants have moved for summary judgment on both of Plaintiff's remaining retaliation claims. In support, Defendants argue that: (1) Plaintiff failed to allege all of the

necessary elements to establish either retaliation claim (Doc. 81 at pp. 9-12); (2) Plaintiff's placement in segregation does not implicate a liberty interest (*Id.* at pp. 12-13); (3) Defendants are entitled to qualified immunity (*Id.* at pp. 13-15); and (4) Plaintiff failed to allege any physical injuries and is therefore not entitled to compensatory or punitive damages (*Id.* at pp. 15-16). In response, Plaintiff contends that he alleged and demonstrated all the necessary elements of his retaliation claims and Defendants' legal arguments lack merit (*see generally* Doc. 86).

In order to prevail on his retaliation claims against Defendants, Plaintiff needed to both demonstrate Defendants' personal involvement and establish a *prima facie* case of retaliation by showing that "1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). "Once a prima facie case is established, the burden shifts to the defendant to rebut the claim, that the activity would have occurred regardless of the protected activity." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If Defendants meet this burden, Plaintiff must then demonstrate that "the proffered reason is pretextual or dishonest." *Id.*

I. <u>Count 4 – Defendant Atkin's Allegedly Retaliatory Investigative Reports</u>

Count 4 alleges that Defendant Atkins retaliated against Plaintiff by filing false investigative reports in response to Plaintiff's filing of grievances and a lawsuit (Doc. 52 at p. 12). Defendant Atkins avers that Plaintiff has not established a viable retaliation

claim against her for filing the investigative reports because he has offered no tangible evidence to support his retaliation claims, other than his self-serving testimony (Doc. 81 at p. 11). Furthermore, while Defendants concede that Plaintiff was placed in segregation and put on investigative status roughly four months after filing a different case against the State of Illinois in the Court of Claims, they contend that, without more, the chronology of events is insufficient to establish retaliation (Doc. 81 at pp. 9-12).

"To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Whitfield*, 76 F.4th at 706 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Here, Defendant Atkins personal involvement in the allegedly retaliatory investigative reports is readily apparent. Both investigative reports are signed by Defendant Atkins (Doc. 81-3) and Defendant Atkins admitted she wrote the investigative reports (Doc. 86 at pp. 79-80). *See Brownlow v. Van Natta*, 2 F. App'x 516, 518 (7th Cir. 2001) ("We have long held that liability under § 1983 must be predicated upon personal responsibility."). Thus, the question is whether Plaintiff has established a *prima facie* case of retaliation by providing sufficient evidence of each element. *See Whitfield*, 76 F.4th at 707-08.

As to the first element, Plaintiff's filing of a lawsuit and writing grievances are unquestionably protected activities that support a First Amendment retaliation claim. *See Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018) ("Under the first element, the filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim[.]"); *Gray v. Hinsley*, No. 04-CV-118-JPG, 2008 WL 2005029, at *7 (S.D. Ill. May 8, 2008) ("There is no doubt that filing a lawsuit qualifies as constitutionally

protected speech[.]"). Defendants even concede as much in their motion (*see* Doc. 81 at p. 9).

Plaintiff has also presented sufficient evidence to create a triable issue of fact as to the second element. Namely, Plaintiff has provided evidence demonstrating that his placement in segregation was, at least in part, a result of the allegedly retaliatory investigative reports filed against him. *See Whitfield v*, 76 F.4th at 708 ("As we just noted, Whitfield's first six days of disciplinary segregation qualify as a serious enough deprivation to deter the exercise of First Amendment rights."). While this deprivation is also the basis for Plaintiff's retaliation claim in Count 5, this deprivation is sufficient to state a viable claim under Count 4 because Plaintiff has provided evidence tending to demonstrate that he was placed in segregation pending the outcome of the investigative tickets filed against him (*see, e.g.*, Doc. 81-2 at transcript p. 19). Furthermore, Grievance No. 1-20-007 includes a response from Plaintiff's counselor which states, "Per Warden Brookhart, committed persons placed in confinement pending completion of an investigation shall be provided the same conditions and services as those required for the segregation unit." (Doc. 81-4, at p. 7). In other words, Plaintiff has created a triable issue of fact as to whether he suffered a deprivation that would deter First Amendment activity based upon the allegedly fraudulent investigative reports.

Finally, Defendant Atkins contends that Plaintiff failed to demonstrate that his speech/protected activity was at least a motivating factor in the adverse actions allegedly taken against him, or that Defendant Atkins acted with a retaliatory motive, which caused

the injury Plaintiff suffered (Doc. 81 at pp. 7-12). Under either standard,[2] Defendant Atkin's main contention is that Plaintiff failed to connect the dots between his protected activities and the alleged retaliation he later suffered (*Id.* at pp. 11-12).

Having reviewed the evidence provided by the parties, the Court is not persuaded by Defendant Atkins' arguments. Several pieces of evidence support Plaintiff's contention that Defendant Atkins retaliated against Plaintiff for engaging in protected activities. First, the alleged retaliation occurred roughly four months after Plaintiff filed his other lawsuit (Doc. 81 at p. 9). *See Morris v. Nelson*, No. 17-CV-05940, 2020 WL 1330382, at *7 (N.D. Ill. Mar. 23, 2020) ("A plaintiff may show that his protected speech was a motivating factor for alleged retaliatory conduct by presenting either direct or circumstantial evidence, including evidence of suspicious timing.").[3] While this length of time may not provide much support for Plaintiff, this is not the only "suspicious timing" present in this case. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff's Grievance No. 1-20-007, dated December 30, 2019, complains of Defendant

---

[2] Defendants appear to argue that the Supreme Court's opinion in *Nieves v. Bartlett* raised the standard required to satisfy this element, by now requiring the retaliatory motive to have caused the injury (Doc. 81 at p. 7). *See* 587 U.S. 391 (2019). However, just last year the Seventh Circuit reiterated the standard for establishing a *prima facie* case of retaliation in violation of the First Amendment in a prison setting in *Whitfield*. *See* 76 F.4th at 707-08. In *Whitfield*, the Seventh Circuit stated that a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity ***was 'at least a motivating factor'*** in the Defendants' decision to take the retaliatory action." *Id.* (internal quotation marks omitted and emphasis added). Accordingly, the Court believes that it is still appropriate to analyze this element by examining whether Plaintiff's filing of grievances and a lawsuit was at least a motivating factor in Defendant Atkin's alleged decision to retaliate against Plaintiff by filing false investigative reports.

[3] Defendants correctly point out that a sequence of events alone is insufficient to reasonably infer retaliation. *See Williams v. Snyder*, 367 F. App'x 679, 682 (7th Cir. 2010) ("But in the prison context, suspicious timing is not enough to overcome uncontradicted evidence of other, non-retaliatory motives-in this case, the correctional officers' unrebutted testimony that the prison disciplined Williams for disobeying orders to remove his dreadlocks under the grooming policy."). Here, however, Plaintiff has provided additional evidence to support his contentions and is not simply relying on suspicious timing alone.

Atkin's filing an investigative report against him without containing all necessary information such as the underlying reason for the filing of the report (Doc. 81-4 at pp. 7-8).[4] Pertinently, Defendant Atkins filed a second investigative report against Plaintiff just a few weeks after Plaintiff filed this grievance (Doc. 81-3 at p. 2). In other words, the second report was filed in close proximity to Plaintiff's protected activity of filing a grievance complaining of Defendant Atkin's first report and investigation, thereby demonstrating another retaliatory motive for her filing of the second report. Additionally, Plaintiff's testimony provides some support for his contention that Defendant Atkins retaliated against him for filing a lawsuit and numerous grievances against prison staff (Doc. 81-2 at transcript pp. 25-35).[5] *See Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010) ("'Self-serving' deposition testimony may satisfy a party's evidentiary burden on summary judgment" when the statement is based upon personal knowledge and grounded in observation).

While the evidence discussed above provides some support for the claim that Plaintiff's grievances and lawsuit were a motivating factor, the contents of the investigative reports and Defendants' insufficient explanations for why the investigative

---

[4] Although the grievance does not mention Defendant Atkins by name, it is clear Plaintiff's grievance was challenging the report she wrote (*see* Doc. 81-4 at pp. 7-8).

[5] Defendants also point out that conclusory statements in a deposition do not create a triable issue of fact (Doc. 81 at p. 11). *See also Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) ("Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact."). However, deposition testimony may be sufficient to satisfy a party's evidentiary burden on summary judgment depending upon whether "the statement is based on personal knowledge and whether it is grounded in observation as opposed to mere speculation." *Whitlock v. Brown*, 596 F.3d 406, 411 (7th Cir. 2010). Here, some of Plaintiff's deposition testimony may be conclusory, but not all of it is. For example, Plaintiff testified that to this day, Defendants have not explained why they were investigating Plaintiff (Doc. 81-2 at transcript p. 35). As this statement is grounded in Plaintiff's own knowledge of what he has been told and observed, this testimony provides additional evidentiary support.

reports were being written against Plaintiff is conspicuous. Having reviewed both reports, the Court is left at a loss as to why either investigative report was filed against Plaintiff. While both reports state Plaintiff is being investigated to determine whether he should be cited under DR 504, neither provides any explanation as to the underlying events for which Plaintiff is to be cited for or what a violation of DR 504 entails (Doc. 81-3). And crucially, in Defendants Atkins' and Brookhart's responses to Plaintiff's requests for admissions and in their motion for summary judgment, Defendants failed to provide any actual explanation as to why the two investigative reports were lodged against Plaintiff (*see* Doc. 86 at pp. 72-80; Doc. 81 at p. 10). Likewise, neither Defendant could determine whether an investigation ever occurred in response to the investigative reports (*Id.*). This failure to provide any explanation other than citing to DR 504 is telling. If there was a proper reason why Plaintiff was being subjected to an investigation under DR 504, the Court is baffled as to why Defendants would not state what that reason was with any particularity. Because Plaintiff has sufficiently demonstrated and argued that Defendant Atkins failed to provide a justification for filing the two investigative reports, the Court believes this provides evidence which a jury could reasonably rely upon to infer that Defendant Atkins acted with a retaliatory motive. *See Whitfield*, 76 F.4th at 712 ("Spiller can insist that she bore no ill will towards Whitfield, but that does not answer the question whether she can identify a permissible justification for her action.").[6]

---

[6] In the somewhat similar context of retaliatory prosecution cases, the Supreme Court has explained that a plaintiff must plead and prove the absence of probable cause for the underlying criminal charge. *See Nieves v. Bartlett*, 587 U.S. 391, 400-01 (2019). While such a requirement is not applicable to this case as it does not involve allegations of retaliatory prosecution, the Court finds that Plaintiff has similarly demonstrated a lack of justification for the two investigative reports filed in this action. For instance, in Defendants'

Defendant Atkins argues Plaintiff has not identified any reason why she would seek to retaliate against him. Defendant Atkins further notes that Plaintiff's prior lawsuit didn't involve her and it does not appear Plaintiff's grievances prior to December 2019 were complaining about her actions. These contentions, however, will ultimately have to be weighed by a jury as the Court does not believe summary judgment is appropriate on Count 4. This is because Defendant Atkins is unable to explain why she filed not one, but two, investigative reports against Plaintiff, which have no records of them ever being followed up on. Her inability to adequately explain the reasoning for filing two investigative reports constitutes evidence supporting Plaintiff's assertion that the investigative reports were retaliatory and not written for a legitimate reason. Additionally, as discussed above, Plaintiff filed a grievance directed at Defendant Atkins' first report, providing an additional reason why a reasonable trier of fact might infer that Defendant Atkins sought to retaliate against Plaintiff.

Accordingly, summary judgment is not appropriate as to Count 4. Plaintiff has demonstrated a *prima facie* case of retaliation in violation of the first amendment and by failing to provide an explanation for the investigative tickets, Defendant Atkins has failed to rebut Plaintiff's claim by demonstrating that the complained of activity would have occurred anyways.

---

responses to Plaintiff's requests for admissions and in their motion for summary judgment, Defendants did not provide any factual details or allegations as to why Plaintiff was being investigated under DR 504 and issued two reports/tickets (*see* Doc. 86 at pp. 72-80; Doc. 81 at p. 10). Likewise, both Defendants could not determine whether an investigation even occurred in response to the investigative reports (*Id.*). Thus, the absence of any evidence demonstrating an adequate explanation for the first investigation, let alone the second, constitutes evidence that could be relied on to determine that Defendant Atkins acted with a retaliatory motive.

## II. *Count 5 – Defendants' Retaliatory Placement of Plaintiff in Segregation*

Count 5 alleges that Defendants placed Plaintiff in segregation for a prolonged period of time in retaliation for his filing of grievances and a lawsuit. Defendants Atkins and Brookhart argue that Plaintiff has not established a viable retaliation claim under this Count because he has failed to offer sufficient evidence to support this claim.

As an initial matter, Plaintiff has conceded that he has not stated a viable claim for retaliation against Defendant Goins. Pertinently, Plaintiff's response brief indicates that Plaintiff desires to voluntarily dismiss Defendant Goins because discovery did not lead to any affirmative links demonstrating Defendant Goins involvement in the alleged violations of Plaintiff's constitutional rights (Doc. 86 at p. 8). Accordingly, the motion for summary judgment on Count 5 as to Defendant Goins is GRANTED and Defendant Goins is dismissed with prejudice.[7]

Before analyzing the elements of this retaliation claim, the Court first considers whether the remaining Defendants had sufficient personal involvement in Plaintiff's placement in segregation. As discussed above, Defendant Atkins wrote both investigative reports against Plaintiff which resulted in him being placed in segregation (Doc. 81-3). As a result, there is sufficient evidence to demonstrate Defendant Atkin's personal involvement under this Count as well.

The Court next considers whether Plaintiff established that Defendant Brookhart was also personally involved in the retaliatory conduct alleged in Count 5. Here, Plaintiff

---

[7] While Plaintiff did not indicate whether his voluntary dismissal of Goins was with or without prejudice, the Court believes that the only fair result at this stage of the case is a dismissal *with prejudice*.

has not met his burden of demonstrating Defendant Brookhart's personal knowledge and involvement in his allegedly retaliatory placement in segregation. At most, Plaintiff has provided evidence demonstrating that Defendant Brookhart reviewed his emergency grievance dated December 30, 2019 (Doc. 81-4 at pp. 7-8), and also signed off on his annual reclassification (Doc. 81-7).[8] However, even assuming Defendant Brookhart was aware of Plaintiff's placement in segregation, Plaintiff has not provided any evidence tending to demonstrate that Defendant Brookhart was personally involved in Plaintiff's placement in segregation. During his deposition testimony, Plaintiff was asked whether he had any evidence of Defendant Brookhart's involvement, to which he responded, "I don't have any." (Doc. 81-2 at transcript p. 34). Having thoroughly reviewed the record, the Court likewise concludes that there is no evidence that Defendant Brookhart was involved in Plaintiff's placement in segregation, other than one self-serving assertion by Plaintiff at his deposition.[9] Without evidence of such, the Court concludes that Defendant Brookhart lacked the requisite personal involvement in the events at issue in this case. *See Whitfield*, 76 F.4th at 706 (Finding the plaintiff failed to present sufficient evidence of Warden Gaetz's "personal involvement in the events at issue."). Accordingly, because Plaintiff has not presented any evidence demonstrating Defendant Brookhart's personal

---

[8] Significantly, this case is no longer proceeding on any claim related to Plaintiff's allegations that his transfer from Lawrence to Menard was retaliatory (*see* Doc. 52 at pp. 12-13). Consequently, the Court need not further analyze whether Plaintiff's annual reclassification considered Plaintiff's violations over an inappropriate time period or was in some other way retaliatory, and any arguments on this point are moot.
[9] Specifically, Plaintiff stated "I believe [Defendant Atkins] was told by her superiors to write the investigation ticket." (Doc. 81-2 at transcript p. 34). But this conclusory statement is not based on personal knowledge. Rather, its Plaintiff's pure speculation and cannot be used to provide any evidentiary support of Defendant Brookhart's personal involvement. *See Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) ("Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact.").

involvement in the allegedly retaliatory act of placing and/or leaving Plaintiff in segregation, summary judgment in Defendant Brookhart's favor is appropriate. *See also Hall-Bey v. Hanks*, 93 F. App'x 977, 981 (7th Cir. 2004) ("Hall–Bey's only other support for his claim is his own speculation that the defendants placed him in administrative segregation because of his accusation of racism, but conclusory statements cannot sustain a non-movant's burden on summary judgment[.]").

Conversely, for the same reasons discussed in Court 4, the Court finds that Plaintiff's claim in Count 5 against Defendant Atkins survives summary judgment. As outlined above, Defendant Atkins was personally involved in the allegedly retaliatory actions that resulted in Plaintiff's placement in segregation. Furthermore: (1) Defendant Atkins conceded that Plaintiff was engaged in the protected activities of filing a lawsuit and writing grievances; (2) Plaintiff's prolonged placement in segregation was a deprivation that would likely deter First Amendment activity in the future; and (3) Plaintiff has presented some evidence tending to demonstrate that his filing of a lawsuit and grievances were a motivating factor in Defendant Atkins' actions, along with presenting several pieces of evidence indicating that Defendant Atkins could not provide a sufficient, alternative explanation for why Plaintiff was being issued an investigative ticket and placed in segregation. Consequently, Defendant Atkins' motion as to Count 5 is denied.

### III.    *Qualified Immunity and Damages*

Finally, Defendants raise several other arguments as to why they believe they should be granted summary judgment.[10] For one, Defendants argue they are entitled to qualified immunity because their conduct does not violate clearly established statutory or constitutional rights (Doc. 81 at p. 13). In addition, Defendants argue that Plaintiff is not entitled to compensatory or punitive damages because he has not suffered any physical injuries. For the reasons discussed below, the Court is not persuaded by either contention and believes Plaintiff's claims against Defendant Atkins in Counts 4 and 5 must go to a jury.

Defendants argue that they are entitled to qualified immunity because the law doesn't prevent them from placing Plaintiff in segregation for 68 days (Doc. 81 at pp. 13-14). The Court is not persuaded by this argument. In *Babcock,* the Seventh Circuit dealt with a similar qualified immunity challenge wherein the plaintiff was placed in a segregation unit, allegedly in relation for filing grievances and lawsuits against prison officials. *Babcock v. White*, 102 F.3d 267, 275-76 (7th Cir. 1996). The defendants argued they were entitled to qualified immunity because government officials performing discretionary functions are entitled to qualified immunity from liability when their conduct doesn't violate clearly established statutory or constitutional rights of which a

---

[10] Additionally, Defendants devoted one section of their motion to arguing that Plaintiff's placement in segregation does not implicate a liberty interest (Doc. 81 at pp. 12-13). This challenge misses the mark. Plaintiff attempted to raise a due process claim related to the investigatory reports and his placement in segregation but that claim was dismissed during the Court's preliminary review (*see* Doc. 13). This means Plaintiff is no longer proceeding on a due process claim and Defendants' arguments on this point are inapplicable. *See Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996) (finding a retaliation claim may survive summary judgment even when there is no other independent constitutional interest).

reasonable person would have known. *Id.* The Seventh Circuit rejected this argument, holding:

> The federal courts have long recognized a prisoner's right to seek administrative or judicial remedy of conditions of confinement, *see Lewis v. Casey,* 518U.S. 343, ----, 116 S. Ct. 2174, 2179, 135 L.Ed.2d 606 (1996), as well as the right to be free from retaliation for exercising this right. *See Matzker v. Herr,* 748 F.2d 1142, 1150-51 (7th Cir. 1984); *Buise v. Hudkins,* 584 F.2d 223, 229 (7th Cir. 1978); *see also Penrod v. Zavaras,* 94 F.3d 1399, 1404-05 (10th Cir. 1996) ("[Q]ualified immunity ... does not apply in this case because the jurisprudence prohibiting retaliatory acts against prisoners for reporting grievances is well-established."). In the instant case, moreover, qualified immunity cannot be premised on the rationale that a particular form of retaliation has yet to be condemned by the courts. As discussed above, retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in McDaniel's position therefore would have been on notice that *any* retaliation, whatever its shape, could give rise to liability. *Harlow*'s standard of objective reasonableness does not require that "the very action in question has previously been held unlawful," but only that "in light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S. Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The qualified immunity defense simply does not dispose of Babcock's retaliation claim.

*Id.* at 276. Similarly, here qualified immunity is inapplicable, because it is readily apparent that filing allegedly fraudulent investigative reports, which result in an inmate's prolonged stay in segregation, is unconstitutional. *Id.*

Defendants also argue that Plaintiff has not alleged any physical injuries and therefore, is not entitled to compensatory or punitive damages (Doc. 81 at pp. 15-16). *See also Pearson v. Welborn*, 471 F.3d 732, 744 (7th Cir. 2006) ("We agree with the district court that this unelaborated claim [of weight loss] is insufficient to support Pearson's assertion that he suffered 'physical injury' as that term is commonly understood."). In response, Plaintiff contends that his placement in segregation was a physical injury in itself and

also that he lost up to fifteen pounds of weight while placed in segregation (Doc. 86 at pp. 10-11).

From the outset, the Court notes "it is questionable whether the availability of a certain type of damages is an appropriate subject for summary judgment, as the prayer for relief and type of damages sought are not part of the claim or defenses for which summary judgment may be sought." *Mason v. Miles*, No. 20-CV-0911, 2023 WL 2631548, at *13 (N.D. Ill. Mar. 24, 2023). In any event, the Court will briefly address this contention now. Here, Plaintiff has testified to losing ten to fifteen pounds due to his placement in segregation (Doc. 81-2 at transcript pp. 39-40). In *Santiago v. Rabideau*, the court faced a similar question of whether weight loss due to an inmate's stay at a cell-house could allow for compensatory damages. No. 15 C 1856, 2019 WL 1747361, at *14 (N.D. Ill. Apr. 18, 2019). The court began by distinguishing *Pearson*, explaining that *Pearson* found the inmate's weight loss was not compensable under the PLRA because the only identifiable cause of that weight loss was the inmate's depression and anxiety. *Id.* In contrast, in *Santiago*, the court found there was no evidence the plaintiff's weight loss was due to emotional distress. *Id.* Instead, the court concluded that a reasonable jury could find the weight loss was due to other causes, such as inedible food. *Id.* Consequently, the court concluded that "Defendants have not carried their burden on a motion for summary judgment to show that Santiago's weight loss cannot be compensated as a matter of law." *Id.*; *see also Mason v. Miles*, No. 20-CV-0911, 2023 WL 2631548, at *13 (N.D. Ill. Mar. 24, 2023) (following *Santiago* and also noting that, should the case proceed to trial, this issue may be raised through a motion in limine.).

As in *Santiago*, Plaintiff has alleged that he suffered the physical injury of weight loss due to his confinement in segregation. Moreover, neither Plaintiff's response in opposition nor his Complaint indicate that Plaintiff's weight loss was due to emotional distress (*see* Doc. 1 at p. 18; Doc. 86 at p. 10). Instead, in both documents, Plaintiff appears to claim that his placement in segregation caused both his physical injury of weight loss and his emotional distress. Furthermore, Plaintiff testified during his deposition that the meals served in segregation are smaller and less nutritional, thus providing an explanation for his weight loss that is due to his confinement in segregation and does not involve emotional distress (Doc. 81-2 at transcript p. 39). "Certainly, [Plaintiff] will need to substantiate his allegation of weight loss in order to obtain compensatory damages. At this stage, however, the Court cannot decide the matter without making a credibility determination, which precludes entry of summary judgment on this issue." *Santiago*, 2019 WL 1747361 at *15; *see also Gray v. Hardy*, 826 F.3d 1000, 1007 (7th Cir. 2016) (Finding a pro se litigant's allegations of asthma and breakouts due to environmental conditions was sufficient, and the inmate's "lack of an affidavit from a medical expert does not doom his pro se claim at [the summary judgment] stage."); *Pippin v. Frank*, No. 04-C-582-C, 2005 WL 756155, at *1 (W.D. Wis. Mar. 30, 2005) ("Although the 1996 Prison Litigation Reform Act precludes petitioner's claim for damages based on 'mental or emotional injury suffered while in custody without a prior showing of physical injury,' 42 U.S.C. § 1997e(e), it is possible that petitioner Pippin will be able to prove at some later stage of these proceedings that he lost wages or was 'falsely confined' in segregation status as a result of their alleged unconstitutional acts."). Accordingly, at this stage of the case (the

summary judgment stage), Defendant Atkins has not carried her burden to show that Plaintiff cannot be compensated, as a matter of law.

For these reasons, the Court declines to grant summary judgment to Defendant Atkins based upon Defendants' arguments of qualified immunity or physical injury.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part (Doc. 81). Specifically, it is GRANTED as to Defendants Goins and Brookhart and DENIED as to Defendant Atkins. Defendants Goins and Brookhart are hereby dismissed with prejudice.

This matter will proceed to trial on Plaintiff's retaliation claims against Defendant Atkins under Counts 4 and 5. A status conference will be set by separate order at which time the Court intends to discuss whether this case should be scheduled for an additional settlement conference or mediation as well as trial scheduling.

**IT IS SO ORDERED.**

**DATED:  September 27, 2024**

s/ Mark A. Beatty
**MARK A. BEATTY
United States Magistrate Judge**